HARVEY BURGETT, RESPONDENT, *v.* ALANSON FANCHER, APPELLANT.

*What property is exempt, as pay of a soldier — Code of Civil Procedure, sec.* 1393.

The defendant having received from the proper department at Washington for a pension due to him a draft on the assistant treasurer at New York for $896.80, indorsed the same and delivered it to a firm of bankers, who gave him $496.80 in cash and a deposit slip, crediting him with $400 more. The balance left with the bankers was subject to the defendant's check, and there was no agreement for the payment of interest thereon.

*Held,* that the said balance was exempt from levy or seizure in any legal proceedings, " as the pay and bounty of a non-commissioned officer, musician or private in the military or naval service of the United States," under the provisions of section 1393 of the Code of Civil Procedure.

APPEAL from an order, made by the county judge of Steuben county, ordering and requiring the appellant to pay over to the receiver of his property, appointed in proceedings supplemental to execution in this action, the sum of $168.16 on deposit in the appellant's name, with Lattimer & Winton, private bankers, whose place of business is in the village of Addison, New York, or in default thereof to be adjudged guilty of contempt, and that a precept of commitment issue. The certificate of deposit, mentioned in the following opinion, was in the following form :

" DEPOSITED BY ALANSON FANCHER IN THE ADDISON BANK :

ADDISON, *May* 31, 1884.

| | Bills. | Dollars. | Cents. | | |
|---|---|---|---|---|---|
| Gold | | | | | |
| Silver | | | | | |
| Checks (enter single) | | | | $496 | 80 |
| | | | | 96 | 80 |
| | | | | $400 | 00 |

LATTIMER AND WINTON."

*J. W. Dininny,* for the appellant.

*D. M. Darrin,* for the respondent.

BARKER, J.:

As we are of the opinion that the order should be reversed upon the merits of the case, it is unnecessary to consider the question of irregularity in procedure, made by the appellant. The material facts are not in dispute. The legal proposition presented is one of general interest and merits careful consideration.

In proceedings supplemental to execution, instituted in this action, a receiver was duly appointed of all the appellant's property not exempt from seizure for the payment of his debts. At the time the proceedings were initiated the appellant had on deposit with a firm of private bankers, doing business near his residence, the sum of $400. By the order appealed from he was required to pay over $168.16 of this sum to such receiver, in payment of the judgment in this action, and the costs awarded against him in this matter.

The appellant places his refusal to obey the order, upon the sole ground that the sum in bank was pension money, and that the same is exempt from all legal proceedings intended to enforce payment of his debts, by virtue of section 1393 of the Code of Civil Procedure. By that section it is enacted, that " the pay and bounty of a non-commissioned officer, musician or private in the military or naval service of the United States * * * are also exempt from levy and sale by virtue of an execution and from seizure for non-payment of taxes, or in any other legal proceeding." The circumstances connected with the receipt and deposit of this money are: The appellant received by mail from the proper department at Washington a draft on the assistant treasurer of the United States, at the city of New York, an order for $896.80 as pension money allowed him as a private soldier. This order he indorsed and delivered to the bankers for collection; they thereupon advanced to him in cash items $496.80 and delivered to him the certificate already described. The draft was forwarded and paid, and the transaction remained unchanged as between the appellant and the bankers, until after these proceedings were instituted by the respondent, with a view of securing a payment of their judgment out of the balance so remaining in the hands of the bankers. The appellant was not engaged in business, had no previous account in this or any other bank, and his place of residence was some 200 miles from the city of New York where

the draft was made payable. With the money received when the draft was indorsed and delivered to the bank, he paid some debts, and loaned to friends $130 thereof, and had on hand in cash when the first order was served fifteen dollars. The money in the bank was not left as a special deposit, nor did the bank agree to pay interest thereon ; at the time the officers of the bank informed him that he could draw the whole or any part of the money at any time, and if he did not personally visit the bank for that purpose he could draw the same on his own check.

We are unable to discover any fact or circumstance in this transaction from which it can be held that the exemption which the statute has created in favor of the appellant, exempting this money, has been removed, or by which it can be reasonably concluded that he intended to convert the money which he received on the draft into a mere loan to the bankers. The currency in which a pension may be paid by the government seldom passes into the hands of the pensioner, as it would be, in most instances, inconvenient for the recipient to attend at the place of payment and receive the money at the hands of the officer authorized to pay such drafts. The purpose of the government in sending instruments of this character to pensioners is, to enable them to realize on the draft, at or near their homes without any cost or delay, and to secure this end the remittance is made in the form of commercial paper, which can be readily used as the equivalent of cash. It would be manifestly unjust to hold that cash items in the hands of the payee of such a draft, received from his indorsee, were not, within the sense and meaning of the statute, money paid him by the treasurer on whom it was drawn. The money undrawn in the hands of the bankers is the pay and bounty of a soldier, and is entitled to the protection of the statute which the appellant invokes as against the demands of his creditors. He has made no attempt to use the money in question in business, nor sought to loan or invest it in any form or manner. The memorandum delivered to him by the bank is not in a commercial sense a certificate of deposit, nor was it intended to be, for the appellant was authorized to draw against the deposit without the return of the certificate. It is nothing more than a teller's ticket, issued in the hurry of business, and does not purport to show the real transaction between the parties. It would be difficult to

formulate a general proposition by which to determine when the pay and bounty of a soldier has lost the protection of the statute; each case must be adjudicated upon its own state of facts.

In this case we are of the opinion that the appellant was justified in refusing to obey the order, directing him to pay over the sum mentioned out of the money on deposit with the bankers. In principle this case is like the case of *Wildrick* v. *De Vinney* (decided by this court in January, 1884, and briefly reported in 18 N. Y. Weekly Dig., 355). The decisions in the courts of the other States, based upon the United States statutes on the same subject (sec. 4747), to which we are referred by the respondent, are not in point and do not aid in giving a construction to our own statute, as the same is broader in its terms than the federal law and was not intended to be as limited in its operation in protecting pension money in the hands of the pensioner. That statute is limited to protecting and exempting pension money from levy and seizure while it remains in the pension office or in the hands of government officials, and in the course of transmission to the pensioner entitled thereto. After the money is paid over the United States law ceases to be operative, and the right of exemption after that, if any exists, must be found in the laws of the State where the soldier resides.

The case of *Youmans* v. *Boomhower* (3 T. & C. Sc. R., 21) cited by the respondent, does not favor his position as the facts are widely different, and no rule of law is there laid down in conflict with those we entertain. In that case it appeared that the pensioner had either made a gift of the money to his wife, or loaned it to her, and the same in fact had been invested in real estate of which she took the title. The favor of the statute is personal to the pensioner, and if he once relinquishes his privileges then of course it cannot be restored by any effort on his part. This is a beneficent statute and should be liberally construed by the courts, with a view of giving a full effect to the intention of the legislature.

The order should be reversed, with ten dollars costs and disbursements.

HAIGHT, BRADLEY and CORLETT, JJ., concurred.

Order reversed, with ten dollars costs and disbursements.